IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROYAL CROWN LTD., | ) | 4:09CV3184 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DUNCAN AVIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

The plaintiff in this diversity action, Royal Crown Ltd. ("Royal Crown"), asserts three claims against the defendant, Duncan Aviation, Inc. ("Duncan"): (1) a claim that Duncan breached an Exclusive Services Agreement ("Agreement") by failing to pay Royal Crown for soliciting a services contract that was awarded to Duncan by a third party (the "Falcon 20 Project"); (2) a claim for anticipatory breach of the Agreement concerning payments to Royal Crown for successfully soliciting two other projects (the "Buffalo Project" and the "Engines Purchase Project"); and (3) a claim for quantum meruit or unjust enrichment regarding all three projects. Duncan has moved to dismiss the second and third claims.[1]

### *I. BACKGROUND*

Royal Crown is a foreign company located in The Arab Republic of Egypt. Duncan is a Nebraska corporation located in Lincoln, Nebraska. Duncan provides products and services to owners and operators of business aircraft. (Plaintiff's Complaint (filing 1), ¶¶ 1, 2; Agreement (filing 1-2), p. 1.)

---

[1] Duncan's Rule 12(b)(6) motion to dismiss (filing 7) was filed on the same date as an answer and counterclaim (filing 9). However, the answer preserves the defense that Royal Crown's second and third causes of action fail to state claims upon which relief can be granted.

In the parties' Agreement, which was entered into on February 24, 2004, Duncan appointed Royal Crown as a Representative "to solicit the sale of Duncan Services to military, government and private entities and individuals ("Customers") having their principal place of business in The Arab Republic of Egypt ("the Territory") . . .."  For terms of payment, the Agreement provides:

> Duncan will pay the Representative a Commission Fee of eight percent (8%) of the total revenue of all sales and or services (minus transportation costs) provided by Duncan Aviation to the Customer. If the sale or services contract is a Military FMS contract, then the company would not pay the representative by way of commission, but instead it will pay the representative all and any of his costs and expenses which he has undertaken for the signed contract with a maximum allowance of costs which would not exceed eight percent (8%) of the total revenue of the contract (minus transportation costs). Payment will be made within 30 days of receiving the payment from the Customer. . . .

Nebraska law governs the Agreement. (Complaint, ¶¶ 3, 4; Agreement, pp. 1, 4.)

Royal Crown alleges that Duncan "has been awarded a total of three contracts to date and has received payment on one of the contracts–Falcon 20. It has been over 30 days since [Duncan] received payment for 'Falcon 20' and has refused to pay the amount due to [Royal Crown]. . . . The total amount for [Royal Crown's] services that remains due on the contract for 'Falcon 20' . . . is $135,660, . . .. The total amount that is due to [Royal Crown] within 30 days of [Duncan] receiving payment from the Customers of the other two contracts is $368,800 for the 'Buffalo Project' and $521,500 for the 'Engines Purchase Project'." (Complaint, ¶¶ 6, 7.)

## II. DISCUSSION

When confronted with a Rule 12(b)(6) motion, all the factual allegations contained in the complaint are accepted as true, and the complaint is reviewed to determine whether its allegations show that the pleader is entitled to relief. *Bell*

2

*Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). If the complaint does not state "enough facts to state a claim to relief that is plausible on its face," it must be dismissed for failure to state a claim. *Id.* at 1974. The complaint must state enough facts to "nudge [the] claims across the line from conceivable to plausible. . .." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### A. Anticipatory Breach of Contract

Regarding the anticipatory breach of contract claim ("second cause of action"), Duncan argues: (1) the claim is premature because under the terms of the Agreement a commission is not payable to Royal Crown until thirty days after Duncan receives payment from a customer, and no payment has been received by Duncan for either the Buffalo Project or the Engines Purchase Project;[2] (2) Duncan has not unequivocally repudiated the Agreement; and (3) Royal Crown has completed its performance of the Agreement with respect to the Buffalo Project and the Engines Purchase Project.

Duncan first claims that its receipt of payment from a Customer is a condition precedent to its obligation to pay Royal Crown, and suggests that a cause of action for anticipatory breach of its payment obligation will not arise unless and until such condition is satisfied. Thus, Duncan argues in its brief:

> Under the terms of the Agreement, Defendant's duty to pay Plaintiff is only activated upon receipt by Defendant of the particular Customer's payment. *See* Exhibit A to Plaintiff's Complaint, Section 10.a. *See also,*

---

[2] Duncan states in its reply brief that payment was received for the Engines Purchase Project in October 2009. Duncan also expresses a desire to withdraw its motion to dismiss the second cause of action relating to the Engines Purchase Project only, in anticipation that Royal Crown will be filing an amended complaint to allege Duncan's receipt of such payment, but I will rule on the motion as filed.

3

> *Estate of Stine v. Chambanco, Inc.*, 251 Neb. 867, 875, 560 N.W.2d 424, 429 (1997) (stating that a condition must be exactly fulfilled before liability can arise on the contract). Thus, payment by the particular customers for the "Buffalo Project" and "Engine[s] Purchase Project" is a condition precedent to Defendant's duty to pay the Plaintiff under the Agreement. *See Estate of Stine*, 251 Neb. at 875, 560 N.W.2d at 429 (noting that the existence of a condition precedent depends upon the intent of the parties as gathered from the words they have employed and noting that terms such as "if," "provided that," "when," "after," "as soon as," "subject to," "on condition that," and similar phrases are evidence that performance of a contractual provision is a condition). . . . By Plaintiff's own admission in its Complaint, the respective Customers under the "Buffalo Project" and "Engine[s] Purchase Project" have not paid the Defendant. Plaintiff's Complaint, Paragraphs 15-17. As such, the condition precedent to Defendant's obligation has not occurred and there can be no breach or anticipated breach of the Agreement. *See K & K Pharmacy, Inc. v. Barta*, 222 Neb. 215, 217-18, 382 N.W.2d 363, 365 (1986) (stating that the party seeking to enforce a contract containing a condition precedent bears the burden of proof as to the occurrence of the condition, and if there is no evidence of the occurrence of the condition, the contract is not binding and cannot be enforced).

(Filing 8, pp. 5-6.)

The Agreement in this case contains none of the words that were mentioned by the Nebraska Supreme Court in *Estate of Stine* as being indicative of a condition precedent. The Agreement simply requires Duncan to compensate Royal Crown "within 30 days of [Duncan] receiving the payment from the Customer." (Complaint, ¶ 4; Agreement, p. 4.)

"[A]n event is not a condition, even though its occurrence is uncertain, if it is referred to merely to measure the passage of time after which an obligor is to perform." Restatement (Second) of Contracts § 224 (1981). "In resolving doubts as to whether an event is made a condition of an obligor's duty, and as to the nature of such an event, an interpretation is preferred that will reduce the obligee's risk of

4

forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk." *Restatement (Second) of Contracts § 227(1) (1981)*. In other words, there is a presumption that a contracting party who must perform his obligation in advance of an event does not assume the risk that the event will not occur, unless the event is within his control:

> The non-occurrence of a condition of an obligor's duty may cause the obligee to lose his right to the agreed exchange after he has relied substantially on the expectation of that exchange, as by preparation or performance. The word "forfeiture" is used in this Restatement to refer to the denial of compensation that results in such a case. . . . When the nature of the condition is such that the uncertainty as to the event will be resolved before either party has relied on its anticipated occurrence, both parties can be entirely relieved of their duties, and the obligee risks only the loss of his expectations. When, however, the nature of the condition is such that the uncertainty is not likely to be resolved until after the obligee has relied by preparing to perform or by performing at least in part, he risks forfeiture. If the event is within his control, he will often assume this risk. If it is not within his control, it is sufficiently unusual for him to assume the risk that, in case of doubt, an interpretation is preferred under which the event is not a condition.

*Restatement (Second) of Contracts § 227, comment b (1981)*. The Restatement gives this example: "A, a general contractor, contracts with B, a sub-contractor, for the plumbing work on a construction project. B is to receive $100,000, 'no part of which shall be due until five days after Owner shall have paid Contractor therefor.' B does the plumbing work, but the owner becomes insolvent and fails to pay A. A is under a duty to pay B after a reasonable time." *Id.*

If Duncan's receipt of payment from a third party is simply an event which marks the beginning of the 30-day period for Duncan to make payment to Royal Crown, then it is possible an action for anticipatory breach of contact could be brought in advance of such an event. Where a party bound by an executory contract repudiates his obligation before the time for performance, the promisee has an option

5

to treat the contract as ended so far as further performance is concerned, and to maintain an action at once for the damages occasioned by such anticipatory breach. *In re Weinberger's Estate*, 279 N.W.2d 849, 854 (Neb. 1979). The anticipatory breach of a contract is one committed before the time has come when there is a present duty of performance and is the outcome of words or acts evidencing an intention to refuse performance in the future. *Pennfield Oil Co. v. Winstrom,* 720 N.W.2d 886, 901 (Neb. 2006) (citing *Sack Bros. v. Tri-Valley Co-op.*, 616 N.W.2d 786 (Neb. 2000)).[3]

However, other language in the Agreement clearly indicates that Duncan's payment obligation is conditioned upon receipt of payment from a Customer. The Agreement obligates Duncan to pay Royal Crown a commission fee of "eight percent (8%) of the total revenue of all sales and or services (minus transportation costs)" provided to a Customer, or, in the case of a Military FMS contract, to pay Royal Crown's "costs and expenses . . . with a maximum allowance of costs which would not exceed eight percent (8%) of the total revenue of the contract (minus transportation costs)." (Complaint, ¶ 4; Agreement, p. 4.) "Total revenue" is not defined in the Agreement, but the term "revenue" is generally understood to mean "gross income or receipts." *See* Black's Law Dictionary (8th ed. 2004). *See also* Black's Law Dictionary (6th ed. 1990) (defining "gross receipts" as the "total amount of money or the value or other considerations received from selling property or from performing services" and defining "gross revenue" as "[r]eceipts of a business before deductions for any purpose except those items specifically exempted.").

---

[3] But anticipatory breach requires an unequivocal repudiation of the contract. *Pennfield Oil,* 720 N.W.2d at 901. A repudiation is (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for the total breach or (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach. *Restatement (Second) of Contracts § 250 (1981).* The question of whether there has been a repudiation is a question of fact. *See Sack Bros.*, 616 N.W.2d at 795; *Chadd v. Midwest Franchise Corp.,* 412 N.W.2d 453, 458 (Neb. 1987).

6

The meaning of a contract and whether a contract is ambiguous are questions of law. *Kuhn v. Wells Fargo Bank of Nebraska, N.A.*, 771 N.W.2d 103, 112 (Neb. 2009). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Estate of Stine*, 560 N.W.2d at 428. A determination as to whether ambiguity exists in a contract is to be made on an objective basis, not by the subjective contentions of the parties; thus, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous. *Id.* When the terms of the contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as the ordinary or reasonable person would understand them. *Thrower v. Anson*, 752 N.W.2d 555, 561 (Neb. 2008).

I conclude that the term "total revenue" unambiguously refers to money that has actually been received by Duncan for sales and services related to third-party contracts. In other words, "total revenue" is synonymous with "gross receipts". It means that Royal Crown does not get paid unless Duncan gets paid. This is true regardless of whether Royal Crown is to be paid a percentage commission fee or is to be reimbursed for costs and expenses, since both methods of payment are tied to the "total revenue" that is received from a third-party contract.

"When an obligation to pay money is, by agreement, made to depend upon the action of another party, over whom neither party has control, payment cannot be exacted, unless the specific act is performed." *Coyle v. Janssen*, 326 N.W.2d 44, 47 (Neb. 1982) (quoting *O'Brien v. Fricke*, 27 N.W.2d 403, 408 (Neb. 1947)). Thus, the complaint fails to state a claim upon which relief can be granted with respect to Duncan's alleged indebtedness to Royal Crown for the Buffalo Project and the Engines Purchase Project. This determination makes it unnecessary to discuss Duncan's two other arguments regarding the second cause of action.

### B. *Quantum Meruit or Unjust Enrichment*

Duncan also advances three arguments concerning the claim for quantum meruit or unjust enrichment ("third cause of action"): (1) Royal Crown cannot simultaneously sue for breach of contract and equitable relief; (2) this claim has the same defects as the claim for anticipatory breach of contract; and (3) Duncan has not benefitted from the contracts for the Buffalo Project or the Engines Purchase Project because it has not been paid on those contracts.

The simple answer to Duncan's first argument is that under federal pleading practice "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). While the Federal Rules of Civil Procedure govern pleadings in this diversity action, *see Roberts v. Francis*, 128 F.3d 647, 650 (8th Cir. 1997), Duncan's argument also runs contrary to Nebraska law. *See Professional Recruiters v. Oliver*, 456 N.W.2d 103, 107 (Neb. 1990) ("A plaintiff is permitted to plead both express contract and quasi-contract in the same petition.").

"Generally, the principle of quantum meruit is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." *Collection Bureau of Grand Island, Inc. v. Fry*, 610 N.W.2d 442, 447 (Neb.App. 2000) (quoting *Tracy v. Tracy*, 581 N.W.2d 96, 101 (Neb. App. 1998)) (emphasis omitted). "It has been said that where benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving and retaining the benefits to pay their reasonable value." *Id.* (quoting *Professional Recruiters*, 456 N.W.2d at 108) (emphasis omitted).

8

However, "an express contract precludes the existence of a contract implied by law or a quasi-contract." *Siebler Heating & Air Conditioning v. Jenson*, 326 N.W.2d 182, 184 (Neb. 1982). *See also Folgers Architects Ltd. v. Kerns*, 633 N.W.2d 114, 128 (Neb. 2001) ("Neither promissory estoppel nor quantum meruit is a viable theory when an enforceable contract exists between the parties . . . ."). This means that Royal Crown's third cause of action will only be actionable if the parties' Agreement is determined to be unenforceable.

Duncan next argues that "with regards [sic] to the Buffalo Project and the Engines Purchase Project and as previously argued under Subpart A of Defendant's argument above – Plaintiff has failed to state a claim upon which relief can be granted for anticipatory repudiation. In the interest of brevity, Defendant will not restate in full here its position regarding Plaintiff's claim of anticipatory repudiation with regards to the Buffalo Project and Engine[s] Purchase Projects, but instead directs the Court to those arguments made by Defendant above. Suffice it to say that Defendant is not yet entitled to payment for those projects because Defendant has not received payment from the respective Customers for those projects." (Filing 8, p. 11.)

This argument presupposes that Royal Crown is attempting to assert a claim for anticipatory breach of an implied contract, which does not appear to be the case. As I read the complaint, Royal Crown is simply alleging for its third cause of action that it has performed work for which it deserves to be paid, regardless of whether Duncan has received payment for any of the projects. None of Duncan's arguments regarding anticipatory repudiation are material to the third cause of action.

For its final argument, Duncan contends that since it has not been paid for the Buffalo Project and the Engines Purchase Project, as to those projects it "has not received any benefit for which, under equitable principles, it should disgorge." (*Id.*) Again, however, regardless of whether Duncan has received payment, it is Royal Crown's position that valuable services were performed for Duncan's benefit (*i.e.*, the procurement of 3 contracts) for which compensation is due. Under this theory of

9

recovery, the measure of damages is the reasonable value of the services performed. *See* Tracy, 581 N.W.2d at 101-02.

## *CONCLUSION*

Royal Crown's claim for anticipatory breach of contract is premature because Duncan is not alleged to have received payment from the Customers on the Buffalo Project or the Engines Purchase Project. Royal Crown's claim for quantum meruit or unjust enrichment (third cause of action) is properly pleaded as an alternative to the claim for breach of express contract (first cause of action), and it covers services performed by Royal Crown in connection with contracts for the Falcon 20 Project, the Buffalo Project, and the Engines Purchase Project.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss (filing 7) is granted in part and denied in part, as follows:
1. The second cause of action (anticipatory breach of contract) is dismissed for failure to state a claim upon which relief can be granted.
2. In all other respects, the motion is denied.

January 28, 2010.        BY THE COURT:

*Richard G. Kopf*
United States District Judge